(15 App. Div. 61.)

GALLO v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 9, 1897.)

1. CONTRACT—PROVISION FOR TERMINATION—NOTICE.
    A written notice of an election to terminate forthwith a contract which provided that it could be ended by giving "at least 10 days' notice" does not terminate the contract on the date of the notice, but 10 days thereafter.
2. RELEASE—VALIDITY—CONSIDERATION.
    A writing not under seal, signed by one of the parties to an executory contract, after partial performance by him, purporting to revoke and cancel the contract by mutual consent, is not effectual as a release, unless supported by a consideration.
3. CONTRACTS—NOTICE OF TERMINATION—WAIVER.
    The notice required by a contract to be given by one party of an election by him to terminate it is waived by writings signed by the other party, reciting,

respectively, that the contract was thereby canceled and terminated by mutual consent; that it might be canceled forthwith, without notice; and that it was agreed that the contract might be terminated forthwith, and become absolutely void, without further notice.

4. Same—Conditional Waiver—Parol Evidence.

    A party to a contract who signs a paper in terms waiving a provision that the other party should give notice of an election by him to terminate the contract may show by parol evidence that the waiver was delivered conditionally.

Appeal from trial term, New York county.

Transferred from the First department.

Action by Joseph Gallo against the mayor, aldermen, and commonalty of the city of New York, for breach of contract. From the portion of the judgment dismissing the complaint as to the first and third alleged causes of action, plaintiff appeals. Reversed as to the first cause.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Arthur H. Masten, for appellant.

William L. Turner, for respondent.

BRADLEY, J. The first cause of action set forth in the complaint is founded upon an alleged breach by the defendant of a contract between the parties whereby it was agreed that the plaintiff should have the privilege of assorting the refuse dumped from the carts of the street-cleaning department at the dumping boards of the city, for the period of one year from June 12, 1892, for which the plaintiff undertook to furnish all the laborers necessary to trim the scows and boats of that department, and pay to the city $1,785 weekly in advance. The plaintiff entered upon the performance of the contract. The alleged breach is that on or about the 1st day of November, 1892, the defendant refused to allow the plaintiff to proceed further in its performance. The contract contains a provision to the effect that if, at any time before the expiration of such period, the commissioner of street cleaning shall deem it for the interest of the city so to do, for any other reason than the failure of the plaintiff to comply with the terms of the agreement, he shall have the power to terminate it upon giving at least 10 days' notice in writing to him of such intention, and that, on the date and time specified in the notice, the plaintiff would discontinue the work, and the agreement absolutely terminate. In September, 1892, the health department, in apprehension of cholera, as a precautionary measure, required that assorting the refuse should be, and it was, suspended. In this the plaintiff acquiesced, and, pursuant to an arrangement with the defendant, he, by laborers furnished by him, did the work of trimming the scows at the dumping boards, without any assorting, at a stipulated price for the service, until about the 1st day of November, when he received from the commissioner of street cleaning a notice in writing that the contract for trimming scows had been awarded to a person named, and that the services of the plaintiff's men in such work would not be required after that date. This notice was not in the form of that contemplated by the

terms of the contract, as it did not specify a day at least 10 days subsequent to the time of service for the termination of the contract. But, in view of the fact that it was within the power of the commissioner to put an end to the contract on 10 days' notice, it would seem that such must be deemed to have been the consequence of this notice, if at that time the 10-days notice provided for in the contract was necessary to terminate it. The view of the commissioner evidently was that no such notice was then required for the purpose, by reason of three certain instruments in writing, of date October 3, 1892, executed and delivered by the plaintiff, in one of which it was stated that the contract was thereby canceled and revoked by mutual consent, without prejudice to either party as against the other; in another of them it is stated that the contract may be canceled, and absolutely, forthwith, by the commissioner, without the service of any such notice as that specified in the contract for its termination; and, by the terms of the other, the plaintiff consented and agreed that the contract might be terminated forthwith, and become absolutely void from and after that date, without the service of further notice on him. Those instruments, not being under seal, could not be effectual as a release without proof of a consideration to support them as such. Crawford v. Millspaugh, 13 Johns. 87. But they might constitute a waiver of the notice provided for by the contract for its termination. Buel v. Trustees, 3 N. Y. 197; Phyfe v. Eimer, 45 N. Y. 102. And, without something appearing to the contrary, they would have been of such effect, and, as the consequence, the first alleged cause of action would have no support in the evidence. Such was the situation when the parties treated the evidence as closed. But afterwards, on the application of the plaintiff's counsel, the court opened the case for further evidence relating to those three instruments, and limited the inquiry to the question whether they were obtained from the plaintiff by fraud. If there had been an adherence to such restriction, it would be difficult to see in the proof offered any support for that charge; but the plaintiff did offer to introduce evidence tending to prove that those instruments were delivered conditionally, to be used only in a certain event and for a certain specified purpose, and that such event or occasion had not arisen. The evidence was excluded, not because offered too late, but on the ground that it would present no question for the jury. The view taken of the record is such that, when this evidence was offered, the condition upon which permission was at first given to the plaintiff to add further evidence was relinquished by the court. The evidence that the delivery of the instruments was conditional would be no contradiction of their terms or the legal effect which their terms import, but that, because the event upon which they were to become operative had not occurred, they did not become effectual as a waiver of the notice mentioned in the contract. Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127; Blewitt v. Boorum, 142 N. Y. 357, 37 N. E. 119. These views lead to the conclusion that the exception to the exclusion of such evidence was well taken. But, if the con-

44 N.Y.S.—10

ditional delivery and the want of any operation or effect of those instruments are made to appear, the breach of the contract on the part of the defendant can embrace within its legal consequences damages for the period of 10 days only, for the reason before suggested.

The plaintiff obtained by the judgment all the relief he sought by the second cause of action alleged in the complaint. There was no support in the evidence for any recovery upon the third cause of action, and as to that the complaint was properly dismissed. The dumping board at the foot of Forty-Sixth street, East river, was in no condition for use when the contract was made. It is said that it had been destroyed by fire. There was no provision in the contract for its reconstruction or repair. Nor was there any ambiguity in the terms of the contract, or anything which required evidence to explain or to complete or perfect any of its provisions. The import of the contract was that the plaintiff should have the privilege of assorting all the refuse which was dumped from the carts of the defendant, and as it was so dumped. It is not seen that any collateral promise made by the commissioner of street cleaning to have that dumping board repaired for use could give any support to the plaintiff's claim to a rebate because it was not fitted up and put into use. He had the full benefit of his contract while in its performance.

In the view taken of the case, there was no error in any ruling at the trial other than the exclusion of evidence relating to the first cause of action alleged in the complaint, and for that the judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.      •